IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BELINDA GONZALEZ, INDIVIDUALLY AND AS NEXT FRIEND OF A.G., A MINOR, *Plaintiff*, | § § § § § | |
| v. | § § § | CIVIL ACTION NO. 2:19-cv-71 |
| CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT, *Defendant.* | § § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES SOUTHERN DISTRICT OF TEXAS COURT:

COMES NOW BELINDA GONZALEZ, INDIVIDUALLY AND AS NEXT FRIEND OF A.G. (hereinafter referred to by name or "Plaintiff") and complains of Defendant CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT (hereinafter referred to by name, "CCISD," or "Defendant"), and in support thereof would respectfully show unto the Court as follows:

**I.**

**THE PARTIES**

1.  Plaintiff BELINDA GONZALEZ ("BELINDA") and her daughter A.G., a minor, are residents of the City of Corpus Christi in Nueces County, Texas. They may be contacted through their undersigned attorney.

2.  Defendant CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT is a public school district located in Nueces County, Texas, and may be served through its Superintendent Roland Hernandez at its central office at 801 Leopard, Corpus Christi, Texas 78401.

## II.

## COMPLAINT AND JURY DEMAND

3. This cause of action arises from CCISD's deliberately indifferent response to the sexual assault against A.G. on the Moody High School premises during school hours and subsequent retaliation and sex-based harassment by fellow students, teachers, faculty, administration, and staff. CCISD's failure to promptly and appropriately investigate and respond to the sexual assault and subsequent sex-based harassment subjected A.G. to further sexual harassment and a hostile environment, effective denying her access to educational opportunities. This action alleges violations of Title IX and the denial of equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

## III.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over the claims against CCISD in this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5. The Court also has subject matter jurisdiction over the claims against CCISD pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by the law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States, or by any Act of Congress providing for equal rights od citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of their civil rights.

6.     Plaintiff brings this cause of action to redress a hostile educational environment pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

7.     This is also an action to redress the deprivation of A.G.'s constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) since the Defendant resides in this district and the events giving rise to the claims occurred in this district.

## IV.

## STATEMENT OF FACTS

*The Day of and After the Sexual Assault*

9.     On March 6, 2018, at Moody High School ("MHS"), a faculty member sent A.G. to retrieve her phone charger from the welding room along with one other male student. No faculty member or adult accompanied or offered to accompany the two (2) children. A.G. and the male student went to the welding building, an unlit, vacant building which contained the welding room. In the hallway outside the door to the welding room, the male student tried to kiss A.G. against her will. A.G. quickly escaped to the welding room to retrieve her charger.

10.    A.G. returned to the hallway to find the male student gone. As A.G. tried to return to class from the welding room through the welding building, she was sexually assaulted by a larger male. As she passed the lockers on her way to the exit, the male pinned her against the lockers and shoved his fingers inside her pants and underwear, forcibly penetrated A.G.'s vagina with his fingers. He also hit A.G.'s body against the lockers. A.G. finally managed to escape the male assaulter's grasp and flee to a classroom, where she asked a teacher if she could use an alternate exit from the welding building. As she walked to the classroom, A.G. saw the male student who

has escorted her to the welding room and tried to kiss her washing and drying his hands in the bathroom.

11. After escaping the welding building, A.G., in shock after what had happened to her, finished the school day and went home without telling anyone about the sexual assault.

*The Day After the Sexual Assault*

12. A.G. stayed home sick from school the next day. Her stomach hurt and she could not eat. She showered over and over, enough times for A.G.'s twin brother to become concerned and tell BELINDA. BELINDA assumed that A.G. had just caught a virus. A.G. kept to herself and went to bed without dinner.

*The Day of the Report*

13. On March 8, 2018, still unaware that her daughter had been sexually assaulted, BELINDA returned A.G. to MHS. Once there, A.G. confided in a trusted female English teacher about the sexual assault of March 6, 2018. A.G. then returned to class, and the teacher apparently informed the administration. At this point, the school began its "investigation."

14. Shortly after A.G. told the English teacher about the assault, the MHS administration pulled A.G. out of her welding class in an embarrassing and public manner. They then brought her to the office to be interrogated by the principal, vice principal, counselor, and two (2) police officers.

15. A.G. was already reaching the end of her account when BELINDA arrived to comfort her. The administration had interrogated A.G. for a long time before even notifying BELINDA that about the recent attack. As A.G. tearfully recounted what she could of the sexual assault, the female assistant principal present repeatedly shook her head, mouthing the word "no" and glaring

disapprovingly at A.G. Based on the adults' reactions, A.G. was afraid of getting in trouble for reporting the truth of the attack -a fear which proved, unfortunately, to be well-founded.

16. After the impromptu interrogation of A.G., the MHS administration first told BELINDA to just take A.G. home to rest. BELINDA wisely took A.G. to be examined at a hospital instead. Because of how audibly and visibly upset A.G. was, Driscoll Hospital held her overnight for observation for A.G.'s safety. There, A.G. had to undergo a rape kit and vaginal examination to determine the extent of the physical damage done when the perpetrator forced his fingers inside her vagina. A.G. cried throughout the examinations and her mandatory overnight stay at the hospital.

17. Not long after the interrogation, the MHS administration asked BELINDA to sign a document stating that BELINDA would allow the school to handle the perpetrator's punishment through In School Suspension ("ISS"), which BELINDA declined to sign.

18. On or about March 9, 2018, the principal of MHS told Belinda there was no way the accused child could have committed the assault. The principal's reasoning was that "the accused" was a good student on the "A" honor roll, and that the accused male had a good relationship with the male welding teacher. After A.G. stayed home from school for a while, the assistant principal told A.G. she could not "keep hiding forever." Even the counselor told A.G. that at some point, she "needed to go back."

19. On or about March 20, 2018, due to her discomfort at seeing the male student who walked her to the charger on March 6, 2018, A.G. switched to her twin brother's welding class instead.

20. On or about March 23, 2018, CCISD finally got around to taking a videotaped statement of A.G. CCISD has not allowed BELINDA to view any surveillance video from the school or

videos of subsequent interviews of A.G. despite BELINDA's repeated requests to view them, nor has it allowed BELINDA access to the required written report and investigation.

*The Aftermath*

21. Since the attack on March 6, 2018, BELINDA and A.G. have asked that the male student suspect – the male student who walked her to the welding room - be kept away from A.G. A.G. feels extremely unsafe and uncomfortable around him. However, CCISD and MHS administration, staff, and employees have refused to protect or separate A.G. from the male student in question. Even after A.G. switched welding periods on or about March 20, 2018, the MHS welding teacher allowed that male student to attend the same period of welding as A.G., even though that period is not the period in which the male student is enrolled. In addition, when that same male student waited repeatedly outside the welding classroom door for A.G. to arrive before her welding period, Belinda and A.G. asked that the school prevent him from doing so. However, MHS's administration claimed that there was "nothing it could do."

22. In fact, to Plaintiff's knowledge, CCISD has only separated the two (2) on only one (1) occasion: When there was a special reward presentation for the entire student body, the school allowed the male student to attend the presentation, while sending A.G. to ISS instead.

23. Further, MHS administration members have defended the perpetrator while further victimizing A.G. The administration went out of its way to repeatedly inform both BELINDA and A.G. that "the accused" was a good student with a good record and relationship with the shop teacher. All the while, members of the administration passed salacious, ridiculous rumors about A.G. to BELINDA, implying that A.G. was lying about the assault and needed therapy for reasons that were the child's own fault. The administration and faculty gathered rumors and stories from the student body in a way that violated A.G.'s privacy to blame her for her own sexual assault.

*The "Investigation"*

24.     After the school withdrew A.G. from welding class on March 8, 2018 and subsequently interviewed various students beginning the week of March 19, 2018, the MHS administration, the teachers, and the other students actively alienated, shamed, and ridiculed A.G. about the sexual assault. This treatment was both an inadequate response to the sexual assault and a violation of A.G.'s constitutional and other rights.

25.     When A.G. reported the assault on March 8, 2018, the MHS administration tried to dissuade BELINDA from pursuing any complaint, asking that BELINDA sign a form stating that the school could deal with discipline of the offender through In-School Suspension ("ISS.") Further, CCISD failed to take the appropriate interim actions to protect A.G.'s safety while it "investigated" the sexual assault. For example, her removal from the welding class on March 8, 2018 was public and embarrassing to A.G. In addition, rather than instituting a "no contact" order between A.G. and that male student, CCISD allowed the male student in question to wait outside A.G.'s welding class for her when the male student was not even enrolled in that period. The male shop teacher even allowed the male student to attend A.G.'s welding period, a period in which he was not even enrolled, after A.G. switched periods. A.G. was also frequently exposed to the male student in question when she walked in the school hallways, participated in school activities, and attended school functions. The accused male student was not placed in alternative classrooms, ISS, Out-of-School Suspension, or any Disciplinary Alternative Education Program.

26.     CCISD obviously failed to protect A.G.'s privacy, as illustrated by the backlash against her by students who were interviewed and people they told about the interview. Word spread like wildfire, and the sexual assault of A.G. became common knowledge on the MHS campus and in the community and the hottest topic in school. As a result, A.G. does not want to go to school.

27. MHS's shoddy so-called "investigation" cause A.G. to undergo further harassment from her emboldened attacker, other students, and the administration and faculty of MHS. Her twin brother became a target for harassment as well. A.G. was separately victimized by both the perpetrator and the people at MHS, including the very adults employed by CCISD who were supposed to protect her. Seeing her attacker at school and listening to other students blame A.G. for reporting the sexual assault caused A.G. to experience extreme emotional suffering that only intensified as the school continued to fail to protect her. A.G. has begun and is still undergoing therapy to address her rage, depression, and other mental problems resulting from the assault and her treatment since it occurred.

## V.

## TITLE IX APPLIES TO CCISD

28. At all times, CCISD was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.*

29. CCISD implemented and executed policies and customs regarding the events that resulted in the deprivation of A.G.'s constitutional, statutory, and common law rights.

30. CCISD is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs, including their responsibilities in accordance with School District Policies, Title IX requirements, the Texas Family Code, and other state and federal statutes.

31. CCISD is responsible for the acts and omissions of its employees.

32. Through its employees at MHS, CCISD learned of the sexual assault of A.G. on the MHS campus by a male.

33.     At the time of the sexual assault, A.P. was approximately fifteen (15) years old, a Freshman at Moody High School (a 9th grader).

34.     At the time of the attack, the accused perpetrator is and was at all times material to this Complaint a minor, male student enrolled at MHS.

35.     Through its faculty, who at all material times were agents and/or employees of CCISD acting within the scope, course, and authority of employment and their employer, CCISD engaged in behavior that was irresponsible at best, and at worst, malicious, including but not limited to:

a.      failed to implement CCISD stated policies and procedures;

b.      failed to follow federal laws;

c.      failed to follow state laws;

d.      failed to properly investigate the sexual assault;

e.      failed to appropriately discipline (or discipline at all) the male student(s) accused of the sexual assault; and

f.      failed to properly address the sexual assault, bullying, hostile environment, and subsequent sex-based harassment of A.G.

g.      failed to investigate the accused male student's misconduct, failed to discipline;

h.      failed to adequately train members of the faculty, administration, and staff with regard to sexual assault situations like the one the subject of this suit;

i.      manifested deliberate indifference to the sexual assault, bullying, hostile environment, and ongoing harassment of A.G. from other students, including the accused.

        To make matters even worse, CCISD engaged in this bullying and harassment directly by gathering rumors about A.G. and blaming A.G. for the incident, as well as making conducting their "investigation" in such a way as to embarrass, ostracize, and shame A.G.

36. CCISD's employees included the Chief Operating Officer and Title IX Coordinator, Principal Clements, the female Assistant Principal, Counselor, Welding Teacher Jaime, female English Teacher Recio, and others. At all material times, these employees, in their official and individual capacities, worked within Nueces County, Texas.

## VI.

## TITLE IX CAUSES OF ACTION AGAINST CCISD

### A. HOSTILE ENVIRONMENT (A/K/A "DELIBERATE INDIFFERENCE")

37. The "Statement of Facts" is incorporated herein as if actually set out in its entirety.

38. The male student's actions constitute criminal acts of sexual assault pursuant to Chapters 21 and 22 of the Texas Penal Code. His behavior is a violation of the code of conduct which merits his expulsion from MHS.

39. First, both A.G. and BELINDA informed a faculty member (the female English Teacher) and then the administration of the sexual assault only two (2) days after the attack occurred. In addition, the assailant and bullies in question were under the control of CCISD, being MHS students, faculty, and administration. Further, the sexual assault and subsequent harassment as described above were based on A.G.'s sex. The alleged harassment and bullying were sufficiently severe, pervasive, and objectively offensive so as to have a concrete, negative effect on A.G.'s access to education at MHS. Finally, as detailed above, CCISD was deliberately indifferent in its response to the sexual assault and subsequent harassment reported by A.G. and BELINDA. By delaying its investigation and failing to take appropriate disciplinary action against the male student, CCISD subjected A.G. to discrimination and unequal treatment, thereby stripping A.G. of her constitutional right to equal protection as guaranteed by the Fourteenth Amendment, and nurtured a hostile educational environment actionable under Title IX.

### B. RETALIATION

40. The "Statement of Facts" is incorporated herein as if actually set out in its entirety.

41. A.G. was engaging in a protected activity when she informed the administration and female English Teacher of her sexual assault and subsequent treatment, which are clear examples of sex discrimination and sexual harassment. In response, A.G. suffered a materially adverse action which produced injury and harm, detailed above. Finally, Defendant CCISD had a retaliatory motive for its omissions and actions (described above) that harmed Plaintiff as further detailed below.

## VI.

### TEXAS TORT CLAIMS ACT – PREMISES LIABILITY

42. The "Statement of Facts" is incorporated herein as if actually set out in its entirety.

43. Defendant CCISD, as an educational district, is a governmental unit under the Texas Tort Claims Act ("TTCA"). CCISD owed A.G. a duty as a premises owner. CCISD and its employees breached that duty owed to A.G. Plaintiff's injury was proximately caused by a premises defect. CCISD or its employees would have been personally liable. No exception to the waiver of immunity bars this claim because no exception implies. Finally, notice was provided to Defendant CCISD as required by the TTCA.

44. The welding building as a while and the area in particular where A.G. was violated was known to be a dangerous area by CCISD. Otherwise, there would not be cameras there. In spite of this knowledge, CCISD employees sent two high school students of the opposite sex, A.G. and a male student, to an unlit, empty welding building containing industrial equipment with no accompaniment whatsoever.

## VII.

## DAMAGES

45. Before the attack, A.G. enjoyed high school and loved welding. She intended to seek scholarships for and pursue more schooling and training in welding after high school. However, since March 6, 2018, A.G. cannot even stand to physically be in the welding classroom. She feels upset and physically ill when she approaches the physical location where she was sexually assaulted on CCISD's watch. Despite encouragement from her family, she does not wish to weld again, because welding reminds her too much of the attack.

46. What's more, the treatment she has received at the hands of fellow students, staff, administration, and faculty members has caused her serious personal injury in the following ways, which include but are not limited to: mental anguish, pain and suffering, embarrassment, humiliation, duress, stress, rage, terror, depression, and anxiety. The whole school has become an uncomfortable and unwelcome place for her. In fact, A.G. is doing everything she can to graduate early in order to escape MHS.

47. A.G. is undergoing therapy, but she is still not the same girl she was before the assault. Before March 6, 2018, she was a happy, go-lucky young lady with a positive attitude. Although she is trying her best, she now has fits of anger and depression related to the incident. A.G. now keeps to herself and is slow to engage with or trust others after the attack and her subsequent treatment by MHS. Sometimes she will be fine for a while and then have an episode where she in consumed with anger, fear, and/or anxiety. A.G. did not suffer from these issues before March 6, 2018. A.G. is getting help from metal health professionals and, with the help of her loving and supportive family, coping as best she can with the effects of the sexual assault and CCISD's

actions afterward. However, A.G. will still have continuing problems for the foreseeable future, if not for the rest of her life.

## VIII.

## INTEREST

48. Plaintiff further requests both pre-judgment and post-judgment interest on all her damages as allowed by law.

## IX.

## JURY DEMAND

49. Plaintiff demands a trial by jury and tenders or will tender payment this date of the required jury fee.

## XI.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, BELINDA GONZALEZ AS NEXT FRIEND OF A.G., A MINOR, requests that Defendant CCISD be cited to appear and answer, and on final trial hereafter, Plaintiff have judgment against Defendant CCISD in an amount within the jurisdictional limits of this Court and not less than $100,000.00, together with all pre-judgment and post-judgment interest as allowed by law, costs of Court, and for all such other and further relief to which Plaintiff may be justly entitled by law and equity, including, but not limited to:

a. Pain and suffering in the past;
b. Pain and suffering in the future;
c. Mental anguish in the past;
d. Mental anguish in the future;
e. Past medical expenses;
f. Future medical expenses;
g. Physical impairment in the past;
h. Physical impairment in the future;

i. Loss of future wage earning capacity;
j Pre judgment interest;
k. Post judgment interest; and
l. Exemplary damages.
m. Attorney's fees, court costs, and statutory interest; and
o. all such other further relief to which the Court finds Plaintiff is entitled, whether at law or in equity.

    Respectfully submitted,

    THE OFFICE OF HEATH O. LAUSENG
    14633 S. Padre Island Drive
    Corpus Christi, Texas 78418
    Phone: (361) 749-1858
    Fax: (361) 749-0889

    By:    */s/ Heath O. Lauseng*
           Heath O. Lauseng
           Attorney-in-charge
           Texas Bar No. 24080999
           Federal Bar No. 2005218
           heath@moneyandthelaw.com
           *Attorney for Plaintiff*